UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| OSHEA ROBERTS<br>109 Conifer Circle<br>Dayton, OH 45431 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) ) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | ) ) ) | |
| GRACEWORKS ENHANCED LIVING<br>11370 Springfield Pike<br>Cincinnati, OH 45246 | ) ) ) ) ) | **JURY DEMAND ENDORSED HEREIN** |
| **Serve Also:**<br>Gracworks Ehanced Living<br>c/o Judy A. Budi, Stat. Agent<br>6430 Inner Mission Way<br>Dayton, OH 45459 | ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Oshea Roberts ("Roberts" or "Plaintiff") by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Roberts is a resident of the city of Dayton, Greene County, state of Ohio.

2. Defendant Graceworks Enhanced Living ("Graceworks") is a domestic non-profit corporation that conducts business throughout Ohio. The events and omissions of this Complaint took place at 11370 Springfield Pike, Cincinnati Ohio 45246.

3. Graceworks is, and was at all times hereinafter mentioned, Roberts' employer within the meaning of Title VII of the Civil Rights Act of 1964, U.S. Code, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), the Americans with Disability Act ("ADA") 42 U.S.C. § 12101, Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq., and R.C. § 4112 *et seq*.

**JURISDICTION & VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Roberts is alleging federal law claims under Title VII, the ADA, and the FMLA.

5. This Court has supplemental jurisdiction over Roberts' state law claims pursuant to 28 U.S.C. § 1367, as Roberts' state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. § 1391.

7. Within 300 days of the conduct alleged below, Roberts filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2020-01609) against Graceworks ("EEOC Charge").

8. On or about May 28, 2021, the EEOC issued and mailed a Dismissal and Notice of Rights letter to Roberts regarding the EEOC Charges.

9. Roberts received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

10. Roberts has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

11. Roberts has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

### A. Overview

12. Roberts is a former employee of Graceworks.

13. At all times noted herein, Roberts was qualified for her position with Graceworks.

14. During her employment with Graceworks, Roberts suffered from anxiety and panic attacks, which constituted disabilities.

15. Graceworks was aware of Roberts' disabilities.

16. In the alternative, Graceworks perceived Roberts as being disabled due to her anxiety and panic attacks.

17. At all times noted herein, Roberts could fully perform the essential functions of her job, with or without a reasonable accommodation.

18. Roberts is African American, placing her in a protected class for her race.

19. On or about May 2, 2017, Roberts began working for Graceworks as a Senior Direct Case Professional, until Graceworks terminated her employment on or about May 1, 2020.

### B. Roberts was a Great Employee

20. Roberts had an exemplary employment record with no significant history of discipline with residents in the three years she had worked for Graceworks.

21. Roberts received positive feedback on her performance, and she always went above and beyond to make sure the job got done right.

22. Despite Roberts' positive employment record, Graceworks terminated her employment without notice or cause after she took approved paid time off ("PTO") to deal with the emotional stress she was under at Graceworks.

### C. Roberts was Placed on Unpaid Administrative Leave

23. Roberts often worked at Graceworks' Waynegate Home ("Waynegate"). She also worked at other Homes, including Graceworks Shakertown Home ("Shakertown")

24. On or about March 27, 2020, Shakertone's Home Manager, Sarah Zecchini (Caucasian), provided Roberts with a Memorandum stating that she was being placed on "unpaid administrative leave", effective immediately.

25. Consequently, Roberts called her manager, Jennifer Coaston (Caucasian), who said she could not talk about the allegations or investigation against Roberts, and instructed her to simply go home.

26. Roberts learned that she was being placed on leave due to false allegations brought against her by a Waynegate resident, Tom Carder (Caucasian) ("Carder").

### D. Roberts was Subjected to Race Discrimination

27. Upon information and belief, Carder has a documented history of lies and dishonesty.

28. The false allegations brought by Carder stem from a rather innocuous interaction between him and Roberts on or about March 26, 2020.

29. On that date, Carder told Roberts that he wanted to do his laundry, but Roberts had told him laundry would be done later, as she was in the process of preparing and serving dinner.

30. Roberts knew Carder could not do laundry on his own.

31. Ignoring Roberts, Carder decided to start a load of his laundry anyway. He had the dryer on with no heat, he did not put any detergent in the washing machine.

32. Roberts then explained to Carder that he would have to wait to do his laundry or until she or another staff member could supervise/assist him.

33. This was the extent of the interaction between Carder and Roberts.

4

34. The following day, Carder falsely told Roberts' coworkers that she had physically assaulted him.

35. Thus, an investigation occurred.

### E. Graceworks Conducted a Biased Investigation

36. During the investigation, an investigator spoke with Roberts to get her side of the story.

37. Roberts denied ever assaulting Carder, denied ever speaking with Carder in a harsh tone, and identified a witness, Tashaunda Linwood, who was present during the interaction with Carder and could corroborate Roberts' versions of events.

38. Roberts also presented evidence during the investigation to refute Carder's allegations.

39. On or about March 31, 2020, Roberts met with Cari Oehlenschlager (Caucasian) and an investigator from the Montgomery County Board of Developmental Disabilities regarding the allegations.

40. Roberts was refused any representation during this meeting.

41. On or about March 30, 2020, Graceworks' HR Manager, Jennifer Wurzelbacher ("Wurzelbacher") (Caucasian), sent Roberts an email stating, "[s]hould our investigation find no wrong-doing on your part, you will be paid for your missed shifts while the investigation is being conducted."

42. This turned out to only be partially true, as Roberts was paid for only half the time she was on leave.

43. On or about April 2, 2020, Graceworks sent Roberts a letter stating, "we did not substantiate the allegation of physical abuse."

44. Despite no evidence of physical abuse, Graceworks chose to believe Carder's unfettered allegations.

5

45. The letter further indicated that Graceworks had "serious concerns regarding [Roberts'] interactions and treatment of the resident during this time" and that two additional Waynegate residents "are fearful of [Roberts] and do not wish [her] to return to their home."

46. Graceworks provided no evidence or details to support or explain these "concerns" and new allegations.

47. As a result of such an inconclusive investigation, Graceworks gave Roberts a "final written warning for violation of resident rights".

48. Graceworks then chose to transfer Roberts to their Clear Brooke Home, demoted her, and decreased her hourly pay.

### F. Roberts was Experiencing Severe Anxiety Due to her Disability

49. On or about April 7, 2020, Roberts sent Wurzelbacher an email requesting personal leave.

50. In her email, Roberts wrote that she was "very distraught" to learn that she would not be permitted to return to the Waynegate Home, and stated that she felt her demotion and transfer were retaliatory and biased "towards [her] ethnicity".

51. This was a protected complaint.

52. Roberts reported to Wurzelbacher, "I have been suffering from panic attacks from extremely high anxiety levels since the beginning of this process, and they have gotten worst (sic) after learning that I have been reassigned a new home and demoted unfairly."

53. Roberts consulted with her doctor about feelings of anxiety and panic attacks, who then prescribed her anti-anxiety medication.

6

54. Roberts further expressed to Wurzelbacher that her doctor had advised her to avoid "highly triggering environments" until the medication began to take effect. The medication was also to be monitored and adjusted, if needed, by her doctor.

55. As a result, Roberts' email requested personal leave for a full three weeks to allow herself adequate time to adjust to the new medication and avoid triggering environments.

56. Upon receiving this email, Graceworks had notice of Roberts' disability due to anxiety and panic attacks.

### G. Roberts was Wrongfully Terminated While on Leave

57. On or about April 9, 2020, Graceworks sent Roberts a Notice of Eligibility and Rights & Responsibilities form to start the process of applying for leave under the Family and Medical Leave Act ("FMLA").

58. While Graceworks initially granted Roberts' request for paid time off due to her medical issues, Roberts was terminated while on leave.

59. Wurzelbacher stated that the basis of the termination was "[b]ecause we have not heard back from you nor have we received the completed FMLA forms, we have no choice but to end your employment effective May 1, 2020."

60. As of May 1, 2020, Roberts had not yet returned her FMLA paperwork because her physician had been out of the office due to the COVID-19 pandemic.

61. Graceworks was aware of this fact because Roberts kept in constant contact with Linda Pieszala (Caucasian) in HR during the month of April to let her know that she was trying to get her doctor to complete the forms but was unable to due to her doctor's absence.

62. This was no fault of Roberts', yet Graceworks still chose to terminate her.

63. Graceworks' purported reason(s) for Roberts' employment termination was pretextual.

64. Roberts was discrimianted against based on her race after participating in a biased investigation of false allegations against her.

65. Graceworks actually terminated Roberts' employment discriminatorily based on her race and/or in retaliation against her protected complaint.

66. There was a causal connection between Roberts' protected class and complaint, and Graceworks' adverse actions taken against Roberts.

67. As a result of the above, Roberts has suffered damages, including economic damages, as well as severe emotional distress, anxiety, and depression.

**COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq*.**

68. Roberts restates each and every prior paragraph of this Complaint as if it were fully restated herein.

69. Roberts is African American, and thus is in a protected class for her race.

70. R.C. § 4112 *et seq*. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

71. Graceworks treated Roberts differently than other similarly situated employees based upon her race.

72. Graceworks' termination of Roberts' employment was an adverse employment action against her.

73. Graceworks' purported reason(s) for Roberts' employment termination was pretextual.

74. Graceworks actually terminated Roberts' employment due to her race.

75. Graceworks violated R.C. § 4112 *et seq*. by terminating Roberts' employment because of her race.

76. Graceworks violated R.C. § 4112.02 and R.C. § 4112.99 by treating Roberts differently from other similarly situated employees outside her protected class.

77. Graceworks violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Roberts' race.

78. Graceworks violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Roberts' race.

79. Roberts incurred emotional distress damages as a result of Graceworks conduct described herein.

80. As a direct and proximate result of Graceworks' acts and omissions, Roberts has suffered and will continue to suffer damages.

## COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

81. Oshea restates each and every prior paragraph of this Complaint as if it were fully restated herein.

82. Roberts is African American thus is in a protected class for her race.

83. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

84. Graceworks treated Roberts differently than other similarly situated employees based upon her race.

85. Graceworks' termination of Roberts' employment was an adverse employment action against her.

86. Graceworks' purported reason for Roberts' employment termination was pretextual.

87. Graceworks actually terminated Roberts' employment due to her race.

88. Graceworks violated Title VII by terminating Roberts' employment because of her race.

9

89. Graceworks violated Title VII by treating Roberts differently from other similarly situated employees outside her protected class.

90. Graceworks violated Title VII by applying its employment policies in a disparate manner based on Roberts' race.

91. Graceworks violated Title VII by applying its disciplinary policies in a disparate manner based on Roberts' race.

92. Roberts incurred emotional distress damages as a result of Graceworks' conduct described herein.

93. As a direct and proximate result of Graceworks' acts and omissions, Roberts has suffered and will continue to suffer damages.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

94. Roberts restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

95. Roberts is in a protected class for her disability (described *supra*).

96. Graceworks had notice of Robert's disability. Alternatively, Graceworks perceived Roberts as disabled.

97. The ADA provides that it is unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

98. During her employment with Graceworks, Roberts required a reasonable accommodation for her anxiety as she adjusted to new medication.

99. Instead of helping her find a reasonable accommodation, Graceworks terminated Roberts while she was on leave.

100. Roberts' employment termination was based solely on her inability to work while she adjusted to new medication, as suggested by her doctor.

101. Graceworks violated the ADA by terminating Roberts' employment because of her disability.

102. Graceworks violated the ADA by treating Roberts differently from other similarly situated employees outside her protected class.

103. Graceworks violated the ADA by applying its disciplinary policies in a disparate manner based on Roberts disability.

104. Graceworks was unwilling to accommodate Roberts' disability, and intentionally targeted and discriminated against her because she needed an accommodation.

105. As a direct and proximate result of Graceworks' failure to accommodate Roberts' disability, Roberts has suffered and will continue to suffer damages.

**COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, et seq.**

106. Roberts restates each and every paragraph of this Complaint as if they were restated herein.

107. Roberts suffers from anxiety.

108. Due to her anxiety and panic attacks, Roberts is disabled.

109. In the alternative, Graceworks perceived Roberts as being disabled.

110. Roberts' condition constituted a physical impairment.

111. Roberts' condition substantially impaired one or more of her major life activities, including working.

112. Graceworks treated Roberts differently than other similarly situated employees based on her disabling condition.

113. On or about May 1, 2020, Graceworks terminated Roberts' employment without just cause.

114. The purported reason(s) for Roberts' termination was pretext.

115. Graceworks terminated Roberts' employment based on her disability.

116. Graceworks terminated Roberts' employment based on her actual and/or perceived disability.

117. Graceworks violated R.C. § 4112.02 when it discharged Roberts based on her disability.

118. Graceworks violated R.C. § 4112.02 when if discharged Roberts based on her perceived disability.

119. Graceworks violated R.C. § 4112.02 by discriminating against Roberts based on her disabling condition.

120. Graceworks violated § 4112.02 by discriminating against Roberts based on her perceived disabling condition.

121. Oshea suffered emotional distress as a result of Graceworks' conduct and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

122. As a direct and proximate result of Graceworks' conduct, Roberts suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: RETALIATION

123. Roberts restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

124. As a result of Graceworks' discriminatory conduct described above, Roberts complained of the discrimination and disparate treatment she was experiencing.

125. Following Roberts' complaints to Wurzelbacher, Graceworks took adverse employment actions against Roberts, including terminating her employment.

126. Graceworks' actions were retaliatory in nature based on Roberts' opposition to the unlawful discriminatory conduct.

127. Pursuant to R.C. § 4112 *et seq.*, the ADA, and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

128. As a direct and proximate result of Graceworks' retaliatory discrimination against and discharge of Roberts, she has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT VI: RETALIATION IN VIOLATION OF FMLA**

129. Roberts restates each and every paragraph of this Complaint as if they were restated herein.

130. At all times relevant, Graceworks was a qualified employer under the FMLA.

131. At all times relevant, Roberts was qualified to take leave under the FMLA.

132. During her employment, Roberts requested leave under the FMLA.

133. After Roberts utilized her qualified FMLA leave, Graceworks retaliated against her.

134. Graceworks retaliated against Roberts by not offering Oshea her job back and instead terminating her employment.

135. Graceworks willfully retaliated against Roberts in violation of U.S.C. § 2615(a).

136. As a direct and proximate result of Graceworks' wrongful conduct, Roberts is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### COUNT VI: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

137. Roberts restates each and every paragraph of this Complaint as if they were fully restated herein.

138. Pursuant to 29 U.S.C. § 260 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

139. Graceworks is a covered employer under FMLA.

140. During her employment, Roberts qualified for FMLA leave.

141. During her employment, Graceworks initially sent Roberts paperwork to complete in order for her to take FMLA leave.

142. Graceworks had knowledge that Roberts was trying to complete the FMLA forms but could not due to her physician being out of the office due to COVID-19.

143. Instead of offering Roberts proper advisement and adequate time to complete her paperwork, Graceworks chose to terminate Roberts' employment while she was on leave.

144. Therefore, Graceworks unlawfully interfered with Roberts' exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

145. As a direct and proximate result of Graceworks' conduct, Roberts was terminated from her position.

146. As a direct and proximate result of Graceworks' conduct, Roberts is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## **DEMAND FOR RELIEF**

WHEREFORE, Roberts demands the following from Graceworks:

a) Issue a permanent injunction:

   i. Requiring Graceworks to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Graceworks to expunge her personnel file of all negative documentation;

c) An award against Graceworks for compensatory and monetary damages to compensate Roberts for physical injury, physical sickness, lost wages, emotional distress, and other

consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Graceworks in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Roberts' claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Matthew Bruce*
Matthew G. Bruce (0083769)
      Trial Attorney
Evan McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-4744 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@spitzlawfirm.com

*Attorneys for Plaintiff Oshea Roberts*

## JURY DEMAND

Plaintiff Oshea Roberts demands a trial by jury by the maximum number of jurors permitted.

*/s/ Matthew Bruce*
Matthew G. Bruce (0083769)
**THE SPITZ LAW FIRM, LLC**